## In re BIBBEY.

(District Court, D. Minnesota, Fourth Division. September 22, 1925.)

**Usury ⟨⟩32—Sale of automobile on time for more than cash price held "sale," and not "usurious loan."**

Where dealer conditionally sold automobile for more than cash price, taking notes bearing 7 per cent. interest, transaction *held* sale, and not a usurious loan, notwithstanding dealer sold contract and discounted note.

In Bankruptcy. In the matter of George L. Bibbey, bankrupt. On petition of the Otas Finance Company to review an order of the referee in bankruptcy, denying its petition for recovery of automobile. Order reversed.

The above-entitled matter came regularly on for hearing before the undersigned, judge of the United States District Court, upon the petition of the Otas Finance Company, a corporation, to review an order made by the referee in bankruptcy, dated the 16th day of July, 1925, and filed on the 17th day of July, 1925, holding that the conditional sales contract and note given by George L. Bibbey to the Minnesota Case Motor Car Company, Incorporated, is void and of no effect, on the ground that the same is usurious and further holding that the Otas Finance Company has no right, title, interest, or claim in or to the automobile in controversy, and that the trustee in said bankruptcy is the owner of said car, free and clear of any lien, by reason of the conditional sales contract in litigation herein, and ordering that the petition of the Otas Finance Company for the recovery of said car be denied, and discharging the same.

Harold W. Cox, of Minneapolis, Minn., for trustee.

Harold E. Paulson and G. A. Will, both of Minneapolis, Minn., for petitioner.

MOLYNEAUX, District Judge. It appears from the evidence: That on December 11, 1924, G. L. Bibbey purchased from the Minnesota Case Motor Car Company, Incorporated, one automobile suburban coupe, serial No. 39796, motor 8R3713, state license No. 35099B, for which he traded in an automobile at the price of $800 and an assigned note owned by him, valued at $250, and for the balance of the purchase price made, executed, and delivered his promissory note, by the terms of which he agreed to pay to the Minnesota Case Motor Car Company, Incorporated, $1,102.50, in 18 installments of $61.25 each; the first being payable on January 3, 1925, and each month thereafter, until the whole of the same was paid. At the same time, and dated the same date, the said G. L. Bibbey and the Minnesota Case Motor Car Company entered into a conditional sales contract, which was duly filed in the office of the city clerk of the city of Minneapolis, Hennepin county, Minn., on December 13, 1925. That some of the conditions of said conditional sales contract are as follows:

"Minnesota Case Motor Car Co., Inc., the seller, hereby sells, and G. L. Bibbey, the buyer, hereby agrees to buy, subject to the terms and conditions hereinafter set forth, the following described property, together with all equipment belonging thereto, delivery and acceptance of which is hereby acknowledged by the buyer (describing said automobile), and pay therefor in gold coin of the United States the total purchase price of $1,950 (which sum, if the property be an automobile or motor truck, includes the premium for one year for fire and theft insurance), as follows: $1,050 upon the signing of this contract, and the balance at the Northwestern National Bank (main office), in Minneapolis, Minnesota, in equal monthly installments as follows:

$61.25 due one month after date.
61.25 due two months after date.
61.25 due three months after date.
61.25 due four months after date.
61.25 due five months after date.
61.25 due six months after date.
61.25 due seven months after date.
61.25 due eight months after date.
61.25 due nine months after date.
61.25 due ten months after date.
61.25 due eleven months after date.
61.25 due twelve months after date.

Also $61.25 due 13, 14, 15, 16, 17, and 18 months after date."

These notes were made payable according to the terms of said promissory note heretofore referred to, and which is referred to in said contract and made a part thereof. It is

plainly apparent that the insertion of $1,-950 in said contract was a mistake, made by the person who drew the contract, for when it said that $1,950 is to be paid, $1,050 down, acknowledgment of which payment was made, and 18 payments, of $61.25 each, the arithmetic is wrong, for 18 payments of $61.25 amount to $1,102.50, which, added to the $1,050 paid, makes more than $1,950, to wit, $2,152.50, which plainly demonstrates that the person who drew the contract made a mistake.

It is also apparent and without question from the evidence, that the cash price for this car was $1,950, but that Bibbey did not buy it for cash, but on time payments, and it is equally apparent from the testimony that the time payment was not $1,950, but was the down payment of $1,050, made by delivering a car at $800 and the assigning of a note of $250, and the agreement to pay 18 installments, of $61.25 each. All of this is uncontradicted, and is testified to by both sides.

The written contract and the oral evidence in this case are to the effect that Bibbey was to pay for this car on time, as hereinbefore stated, and that the note and sales contract were given, not for the loan of money or the forbearance of a debt, but were given to secure the purchase of the automobile sold by the Case Motor Car Company to G. L. Bibbey. If the Case Motor Car Company had kept this contract and note, and compelled Bibbey to pay, as he agreed to pay, this question probably would not have come up; but the Case Motor Car Company sold and assigned this contract to the Otas Finance Company for the sum of $1,950, which was the cash price of the car, and it is alleged and claimed that this was a scheme by which the Minnesota Case Motor Car Company loaned to Bibbey $1,950 at a usurious rate, exacting therefor the sum of $202.50, and 7 per cent. per annum interest; but the fact appears plain that this was not a loan of money, but was a sale of a car, and it is quite apparent that the Minnesota Case Motor Car Company contemplated discounting and selling the sales contract and note to the Otas Finance Company, as it did do; but this does not alter the fact. It appears to me that this method of financing is not open to the charge of usury. The purchaser of the automobile agreed to pay the amount named in the contract, $2,152.50, by the down payment of $1,050.00 and the 18 installments, and no other conclusion can be legitimately reached but that that was the price agreed upon by Bibbey to be paid for

the automobile, and was not a loan of money, nor the forbearance of money.

"Usury can only attach to a loan of money, or to the forbearance of a debt. It is well settled that, on a contract to secure the price or value of work and labor done or to be done, or property sold, the contracting parties may agree upon one price if cash be paid, and upon as large an addition to the cash price as may suit themselves if credit be given; and it is wholly immaterial whether the enhanced price be ascertained by the simple addition of a lump sum to the cash price, or by a percentage thereon. In neither case is the transaction usurious. It is neither a loan nor the forbearance of a debt, but simply the contract price of work and labor done, or property sold." Evans v. Rice, 96 Va. 50, 30 S. E. 463.

"The test of a usurious contract is: Will its performance result in producing to the lender a greater return for the use of the amount loaned than is allowed by law, and was that result intended?" Lassman v. Jacobson, 125 Minn. 218, 146 N. W. 350, 51 L. R. A. (N. S.) 465, Ann. Cas. 1915C, 774.

"In deciding whether any given transaction is usurious or not, the courts will disregard the form which it may take, and look only to the substance of the transaction in order to determine whether all the requisites of usury are present. These requisites are: (1) An unlawful intent; (2) the subject-matter must be money or money's equivalent; (3) a loan or forbearance; (4) the sum loaned must be absolutely, not contingently, repayable; (5) and there must be an exaction for the use of the loan of something in excess of what is allowed by law. If all these requisites are found to be present, the transaction will be condemned as usurious, whatever form it may assume, and despite any disguise it may wear. But, if any one of these requisites is lacking, the transaction is not usurious, although it may bear the outward marks of usury." 39 Cyc. p. 918.

"It is manifest that any person owning property may sell it at such price and on such terms as to time and mode of payment as he may see fit, and such sale, if bona fide, cannot be usurious, however unconscionable it may be. A vendor may well fix upon his property one price for cash and another for credit, and the mere fact that the credit price exceeds the cost price by a greater percentage than is permitted by the usury laws is a matter of concern to the parties, but not to the courts, barring evidence of bad faith. If the parties have acted in good faith, such a

transaction is not a loan, and not usurious." 19 Cyc. 926.

"Where a vendor offers to sell machinery for $2,100 cash and $2,400 on time notes, it did not render chattel mortgage for $2,400 usurious." Huber Mfg. Co. v. Ellis, 199 Mo. App. 96, 201 S. W. 931.

"Appellant contends that the notes were void for usury. It is sufficient answer to this contention to say that the undisputed testimony shows that the indebtedness, for which the notes in controversy were executed, was on account for merchandise sold by Kaufman & Wilson to the appellant. There was no element of lending or borrowing in the transaction. On the contrary, it was simply a bona fide sale of chattels on a credit, in which transaction the appellant had to pay a higher price than she would have had to pay had she bought for cash. * * * On a bona fide sale of merchandise on a credit at a higher price than the purchaser would have to pay for cash, no charge of usury can be predicated, for the element of lending and borrowing money is absent." Smith v. Kaufman, 145 Ark. 548, 224 S. W. 978.

See, also, Blake v. Askew, 112 Ark. 514, 166 S. W. 965; Holland-O'Neal Milling Co. v. Rawlings (Mo. App.) 268 S. W. 683; Luzzatto v. Kaplan (Sup.) 188 N. Y. S. 522; Davidson v. Davis, 59 Fla. 476, 52 So. 139, 28 L. R. A. (N. S.) 102, 20 Ann. Cas. 1130; Hogg v. Ruffner, 1 Black, 115, 17 L. Ed. 38; Weaver Hdw. Co. v. Solomovitz, 235 N. Y. 321, 139 N. E. 353.

In General Motors Acceptance Corporation v. Weinrich (Mo. App.) 262 S. W. 425, the court held: "Where dealer in good faith sold automobile to defendant on time for more than cash price, taking back note at legal rate of interest, which he subsequently sold to plaintiff at discount equal to excess of price above cost price, held, under the evidence, that note was not usurious, invalidating chattel mortgage securing it." And judgment of lower court directing verdict for defendant was reversed, and cause remanded to lower court, with instructions to render judgment for plaintiff.

There is no question but what the seller may name a greater price when he sells upon time than when he sells for cash, and that is not an unusual practice and custom in merchandising. Of course, in calculating the amount of addition to the cash price, where the goods are sold upon time, what would be a proper interest upon the investment is taken into consideration; the chances of loss and failure to pay, and the insurance necessary to cover the transaction, and the overhead expense for carrying on a business of that kind, all find a place in ascertaining how a merchant may profitably sell upon time and the price to be charged; but this does not make a usurious contract. This does not make it a loan of money, and the collection of interest is merely a method by which the seller calculates the amount that he must charge when selling upon time to make a profit, and in cases of this character it is quite well known that automobile companies expect to discount their sales contracts as they make them, and companies are formed for that express purpose, and that the companies, when they have made such a time sale, usually discount their sales contracts, and are paid therefor by the companies the cash price at which the automobiles are sold when a cash customer is found, and by the plain terms of this contract it is such a sale upon time at a conditional price over the cash price, and the sales contract was discounted and sold to the Otas Finance Company.

Therefore I think that the referee was not warranted in holding the contract in question to be usurious. The Otas Finance Company, to whom said contract was assigned, is entitled to the possession of said automobile, and the referee's order is therefore reversed, and this memorandum is made a part of the order filed herewith.