[Civ. No. 3570. Third Appellate District.—December 17, 1928.]

PACIFIC FINANCE CORPORATION (a Corporation), Respondent, v. ROY R. LAUMAN et al., Appellants.

Perry F. Backus for Appellants.

Overton, Lyman & Plumb for Respondent.

PRESTON (H. L.), J., *pro tem.*—This is an appeal by the defendants from a judgment in favor of plaintiff in two actions originally commenced on the same guaranty. The cases were consolidated and tried by the court together.

The defendants and appellants, on May 23, 1923, guaranteed to respondent, Pacific Finance Corporation, the payment of all moneys due, or to become due, from the Wilshire Motor Company. The complaint in both cases states a cause of action on this written guaranty. The Wilshire Motor Company sold automobiles to purchasers on time, under conditional sales contracts. Some thirty or forty of these contracts were assigned by the Wilshire Motor Company to respondent Pacific Finance Corporation, by separate assignments made at different times, each of which provided that the Wilshire Motor Company guaranteed the payment, by the purchaser of the automobile, of all moneys due, and to become due, under the conditional sales contract. In thirty or forty cases the purchaser of the automobile defaulted in his payments. In these cases the respondent, Pacific Finance Corporation, repossessed the automobiles and sold the same pursuant to the terms of the various assignments. The automobiles did not sell for enough to pay out the original contracts. The Wilshire Motor Company refused to pay the deficiencies, and respondent commenced this action against appellants, the original guarantors of the Wilshire Motor Company, and recovered a judgment for the total deficiencies remaining due under said conditional sales contracts.

Appellants pleaded in their answer and now contend that each one of the conditional sales contracts between Wilshire Motor Company and the purchaser is usurious, under the California Usury Law (Stats. 1919, p. lxxxiii). The trial court found that there was no usury in any of these con-

ditional sales contracts. One of the contracts in question, actually executed with all the terms and conditions, was introduced in evidence, and it was stipulated that if this contract was usurious, all of the other thirty or forty were also usurious. Therefore, we will consider the case as if this was the only contract involved. The contract in evidence recites delivery of the automobile to the purchaser at the time the contract was executed. No interest is provided for in the contract. It provides: ''The seller hereby agrees to sell, and the purchaser agrees to buy, the following described personal property . . . for the sum of $532.24, gold coin of the United States of America of the present standard, payable as follows: $190.00 upon the signing of this contract, receipt of which is hereby acknowledged, and the balance as follows: $28.57 on January 2, 1924; $28.57 on February 2, 1924; $28.57 on March 2, 1924; $28.57 on April 2, 1924; $28.57 on May 2, 1924; $28.57 on June 2, 1924; $28.57 on July 2, 1924; $28.57 on August 2, 1924; $28.57 on September 2, 1924; $28.57 on October 2, 1924; $28.57 on November 2, 1924; $28.57 on December 2, 1924.'' In other words, the contract entered into provides for the sale of the automobile for the sum of $532.84, payable $190 in cash, and the balance, in the sum of $342.84, payable in twelve monthly installments of $28.57 each. On the reverse side of the conditional sales contract is found what is termed ''Dealer's Statement,'' which was filled out by Wilshire Motor Company, and which designates the purchase price of $532.84 as the ''time selling price,'' and recites that $475 is the ''cash selling price,'' and shows the method used by the dealer in fixing the ''time selling price.''

The evidence clearly shows that the sale made by the Wilshire Motor Company to the purchaser in the contract in question was a *bona fide* sale. There is no claim that the purchaser had any right to the automobile prior to the execution of the conditional sales contract, or that the transaction was intended to take the place of a loan. In other words, the evidence is uncontradicted that it was a legitimate business transaction involving a straight sale of personal property under a conditional sales contract, and there is no evidence that the purchaser of the automobile borrowed any money from any source. Appellants do not contend that there was a loan of money, but insist that there

was a "forbearance" on the part of the Wilshire Motor Company. This claim is based entirely upon the evidence, which shows that the automobile sold had a "cash selling price" and a "time selling price," and that the difference between the cash selling price and the time selling price, if looked upon as interest, exceeded twelve per cent per annum on the "cash price." No agreement was entered into for a cash selling price. The only agreement entered into was for a time selling price. Therefore, this question is squarely presented: Does an automobile dealer violate the Usury Law if he charges one price for an automobile when the sale is for cash and another price for the same automobile when the sale is made upon time payments, when the difference between the two prices exceeds twelve per cent per annum? ▪ Or, to state it another way: Does the owner of property, whether it be real or personal, violate the Usury Law if he sells his property on time payments for more than he would sell the same property for cash, and the difference between the two prices, if considered as interest on the cash price, would amount to more than twelve per cent per annum on such cash price? We think not.

When this case was tried in the court below and when the appeal was taken, the question as to whether a transaction of this character came within the provisions of the Usury Law of this state had not been specifically passed upon by the supreme or appellate courts. The supreme and appellate courts have recently, definitely and finally determined that under conditions disclosed by the evidence in the case at bar, there is no infringement upon or invasion of our Usury Law. (*Verbeck* v. *Clymer*, 202 Cal. 557 [261 Pac. 1017]; *Berger* v. *Lodge*, 90 Cal. App. 19 [265 Pac. 515].)

The judgment of the trial court was, therefore, correct and should be affirmed, and it is so ordered.

Finch, P. J., and Plummer, J., concurred.